**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **SHANNON HART** | **Case No.** _____ |
| **2723 Barthas Pl.** | |
| **Cincinnati, OH 45239** | **Judge** _____ |
|      **Plaintiff** | |
| **vs.** | |
| **JEFF WYLER COLERAIN, INC.** | **COMPLAINT** |
| **C/O Corporate Statutory Services, Inc. (S/A)** | |
| **255 E. Fifth St., Suite 2400** | |
| **Cincinnati, OH 45202** | |
| **and** | *JURY DEMAND ENDORSED HEREON* |
| **JEFF WYLER AUTOMOTIVE FAMILY, INC.** | |
| **C/O Corporate Statutory Services, INC. (S/A)** | |
| **255 E. Fifth St., Suite 2400** | |
| **Cincinnati, OH 45202** | |
| **and** | |
| **ERIK VOGEL** | |
| **Address Unknown** | |
| **and** | |
| **JOHN DOES 1-5** | |
| **Addresses Unknown** | |
|      **Defendants** | |

Plaintiff, Shannon Hart ("Plaintiff" or "Hart"), by and through counsel, hereby states as follows for her Complaint:

1.     This is a civil rights action for money damages, and an FMLA case. Plaintiff has been denied rights guaranteed to her by federal and state law. Because of the acts and omissions

1

of the Defendants as alleged herein, Plaintiff was discriminated against in her employment and in her termination, based upon her gender and in retaliation for complaining about same.

## PARTIES

2. Plaintiff, Shannon Hart, is an individual and resident of the State of Ohio who resides at the address listed in the Caption.

3. Defendant Jeff Wyler Colerain, Inc. is an Ohio corporation that conducts business in Ohio.

4. Defendant Jeff Wyler Automotive Family, Inc. is an Ohio corporation that conducts business in Ohio

5. Defendant Erik Vogel ("Vogel") is an individual and resident of the State of Ohio.

6. John Does 1-5 are other entities, unknown to Plaintiff as of the date of filing of this Complaint, such as a parent company, franchisor, franchisee, subsidiary, or other related entity of Jeff Wyler Colerain, Inc., or Jeff Wyler Automotive Family, Inc., that employed Plaintiff during the time she worked at the car dealership located at 8950 Colerain Ave., Cincinnati, OH 45251.

7. For simplicity, Defendants Jeff Wyler Colerain, Inc., Jeff Wyler Automotive Family, Inc., and John Does 1-5 shall each be individually and collectively referred to as "Jeff Wyler," so that each allegation against one of these Defendants is intended to be an allegation against all of them, both individually and collectively.

## JURISDICTION AND VENUE

8. This Court has jurisdiction to hear Plaintiff s Complaint pursuant to 28 U.S.C. § 1331.

9. This Court has pendent jurisdiction to hear Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

2

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

11. Plaintiff has filed a charge of discrimination with the Equal Employment Opportunity Commission and anticipates amending her Complaint to assert federal employment law claims under Title VII.

## FACTUAL BACKGROUND

12. On November 23, 2013, Hart was hired by Jeff Wyler to work as a Greeter at its Florence, Kentucky dealership.

13. Hart was a dedicated and hard-working employee at all times, as evidenced by the raises and promotions she received over her nearly five years of employment with Jeff Wyler.

14. Hart attended classes at Gateway Technical College to gain new and valuable skills to advance within the company.

15. In 2014, Hart became the first ever female Lube Tech in the history of Jeff Wyler's Florence dealership.

16. In 2015 she transferred to Jeff Wyler's Colerain dealership located at 8950 Colerain Ave., Cincinnati, OH 45251, where she was later promoted to the position of dispatcher.

## FMLA LEAVE & SUBSEQUENT DEMOTION

17. On May 23, 2017, Hart's young son was struck by an automobile while riding his bike, suffering near-fatal, life-altering injuries.

18. Hart was granted twelve weeks of FMLA leave to care for her son and oversee his recovery.

19. Hart returned to work before she had exercised the entirety of her twelve weeks of FMLA leave, despite the extensive treatment her son was still undergoing.

20. Upon her return from FMLA leave, Hart learned that she was being demoted from

3

Dispatcher to Service Writer.

21.     Hart was told that she was too unreliable to continue working as a Dispatcher.

22.     This demotion resulted in a substantial decrease in pay and substantially reduced Hart's responsibilities.

**SEXUAL HARASSMENT**

23.     In December of 2017, Defendant Erik Vogel was hired as the new Service & Parts Director at the Colerain dealership, which made him Shannon's direct supervisor.

24.     Vogel started to sexually harass Hart almost immediately. Some examples of this sexual harassment include:

a.     About a week into his tenure, Vogel touched one of Hart's breasts under the guise of pulling her jacket out of the way "to see if she had a work shirt on."

b.     Vogel was constantly "hanging around" Shannon, leaning over her desk, positioning himself uncomfortably close to her.

c.     Vogel made frequent comments to Shannon about her appearance, such as telling her she had pretty eyes.

d.     Vogel told Hart that she should buy new work pants because the ones she was wearing "[didn't] do anything for [her] figure."

e.     Vogel remarked that Hart was "sassy and spunky," like his wife, whom he suggested it was time to "trade in."

f.     Vogel frequently initiated sexual discussions and asked Hart inappropriate questions of a personal and sexual nature. For instance, he told her that "women at car dealerships are usually promiscuous" and asked if she had slept with anyone at the dealership.

4

g.      Vogel asked Hart if she had any "non-visible piercings" or any "additional tattoos that can't be seen," asking if he could see them if there were any.

25.     Hart, who had worked without issue in a predominantly male environment for years, was made incredibly uncomfortable by Vogel's harassment. The harassment made it harder for Hart to do her job.

26.     At first, Hart tried to avoid making a formal complaint because she did not want to put her job in jeopardy.

27.     Hart initially attempted to stop the harassment by making it clear to Vogel that she was not interested in his advances.

28.     She even requested to move to a different desk, farther from Vogel's office.

29.     Vogel himself denied this request, leaving her workspace in the direct line of vision from his own desk.

30.     Despite Hart's efforts, the harassment continued.

31.     Hart submitted a formal, written report of the harassment to Human Resources through the "Compli" website, in accordance with Jeff Wyler's harassment policy.

32.     As a result of the Compli report, Hart met with the dealership's General Manager. He sent her home for the day with pay (though without the opportunity to earn extra through commission).

33.     Hart was told to take time off while an investigation was conducted, despite the fact that it was *Vogel* who was accused of harassment and violation of company policy, which caused her to miss out on the opportunity to earn commission on those days.

34.     During the course of Jeff Wyler's investigation, at least one other employee corroborated Hart's claims of harassment by Vogel.

35. After the conclusion of the investigation, Hart was allowed to return to work, but was informed that Vogel would not be fired or disciplined for his actions.

36. Further, Jeff Wyler would not take any actions to separate Hart from her harasser. She would have to continue to report to him.

37. When Hart informed Jeff Wyler that she would be uncomfortable working around Vogel, she was simply told "I can't control whether you are uncomfortable. That's how *you* feel."

38. Hart could not bear to continue to work under Vogel's supervision and was left with no choice but to resign.

39. By refusing to take any action to protect her from Vogel's persistent sexual harassment, Jeff Wyler deliberately created intolerable working conditions for Hart, constructively terminating her by leaving her no option but to leave her job.

40. Hart was forced to accept another job with substantially less pay.

## COUNT I

### FAMILY AND MEDICAL LEAVE ACT
### (FMLA RETALIATION)

41. Plaintiff incorporates by reference all other averments set forth in this Complaint as if fully set forth herein.

42. Prior to the date she was terminated, Plaintiff worked for Jeff Wyler for over twelve months, had over 1,250 hours of service for Jeff Wyler during the twelve-month period immediately preceding the date she was terminated (as well as the date of her required FMLA leave), and worked in a location where Jeff Wyler had at least 50 employees within 75 miles.

43. Plaintiff's son suffered from a health condition as defined by the FMLA.

44. Plaintiff was an eligible employee under the FMLA.

45. Jeff Wyler was an employer as defined under the FMLA.

6

46.     Plaintiff was entitled to leave under the FMLA.

47.     Plaintiff gave Jeff Wyler notice of her intention to take leave, per Jeff Wyler's policy, and was granted FMLA leave.

48.     Jeff Wyler knew Plaintiff was exercising FMLA leave.

49.     Plaintiff's exercise of leave was an activity protected by the FMLA.

50.     Jeff Wyler interfered with Plaintiff's FMLA benefits and denied Plaintiff FMLA benefits to which she was entitled, by demoting Plaintiff upon her return from leave.

51.     Plaintiff suffered an adverse employment action, including, but not limited to, her demotion and subsequent constructive discharge.

52.     There was a causal connection between Plaintiff's protected FMLA activity (taking leave) and the adverse employment action (demotion).

53.     Defendants' misconduct was willful, wanton, and with disregard for the rights of Plaintiff.

54.     Plaintiff has suffered damages as a direct and proximate result.

## COUNT II

**FAMILY AND MEDICAL LEAVE ACT**
**(FMLA INTERFERENCE)**

55.     Plaintiff incorporates by reference all other averments set forth in this Complaint as if fully set forth herein.

56.     As explained in detail above, Plaintiff was an eligible employee under the FMLA, Defendant was an employer as defined under the FMLA, and Plaintiff was entitled to take leave under the FMLA.

57.     As explained above, Plaintiff gave Jeff Wyler notice of her intention to take FMLA leave, which was granted.

7

58. Jeff Wyler denied Plaintiff FMLA benefits she was entitled, including by refusing to return her to her position and constructively discharging her.

59. Defendants' misconduct was willful, wanton, and with disregard for the rights of Plaintiff.

60. Plaintiff has suffered damages as a direct and proximate result.

## COUNT III

### OHIO REVISED CODE § 4112 - SEX DISCRIMINATION AND SEX HARASSMENT: AGAINST ALL DEFENDANTS

61. Plaintiff incorporates by reference all other averments set forth in this Complaint as if fully set forth herein.

62. Defendants followed and are following a policy and practice of discrimination against Hart because of her gender in violation of O.R.C. § 4112 *et seq.*

63. The effect of the policies and practices pursued by the Defendants as alleged above has been to limit, classify, and discriminate against Hart in ways which adversely affected her status as an employee and ultimately led to her firing because of her gender in violation of O.R.C. § 4112 *et seq.*

64. Defendants' actions in intentionally, willfully, and wantonly discriminating against Hart because of her gender include, but are not limited to, treating Hart differently from similarly-situated male employees as outlined above.

65. Defendants' above-described actions were fraudulent, malicious, wanton and willful, gross and egregious, exhibited a conscious disregard for the rights of Hart, and had a great probability of causing substantial harm in violation of O.R.C. § 4112 *et seq.*

66. As a direct and proximate result of Defendants' discriminatory conduct, Hart has suffered and continues to suffer pain, humiliation, emotional distress, lost wages, and other

damages for which Defendants are liable.

## COUNT IV

### OHIO REVISED CODE §4112 – RETALIATION: AGAINST ALL DEFENDANTS

67.     Plaintiff incorporates by reference all other averments set forth in this Complaint as if fully set forth herein.

68.     Defendants retaliated against Hart for engaging in protected activities by treating her less favorably than other non-complaining employees and constructively terminating her employment, in violation of O.R.C. § 4112.02 et seq.

69.     Defendants' above-described actions were fraudulent, malicious, wanton and willful, gross and egregious, exhibited a conscious disregard for the rights of Hart and had a great possibility of causing substantial harm.

70.     As a direct and proximate result of Defendants' retaliation in violation of O.R.C. § 4112, Hart has suffered and continues to suffer pain, humiliation, emotional distress, lost wages, and other damages for which Defendants are liable.

## COUNT V

### ASSAULT & BATTERY: AGAINST ALL DEFENDANTS

71.     Plaintiff incorporates by reference all other averments set forth in this Complaint as if fully set forth herein.

72.     Vogel's intentional conduct, detailed above, constitutes civil assault, as Vogel intentionally placed Hart in apprehension of an impending battery.

73.     Vogel's intentional conduct, detailed above, constitutes civil battery, as Vogel intentionally committed a wrongful and unwelcome touching of Plaintiff.

74.     Jeff Wyler is liable for Vogel's assault and battery of Hart, as well as all damages

resulting therefrom, on the basis of the doctrine of respondeat superior.

75. As a direct and proximate result, Plaintiff has suffered damages.

## COUNT VI

### NEGLIGENT HIRE, TRAINING, SUPERVISION AND RETENTION: AGAINST JEFF WYLER

76. Plaintiff incorporates by reference all other averments set forth in this Complaint as if fully set forth herein.

77. An employment relationship existed between Jeff Wyler and Vogel.

78. Upon information and belief, Vogel was the subject of sexual harassment complaints at a dealership he worked at prior to being hired by Jeff Wyler, and was either fired or allowed to resign from that dealership as a result.

79. Jeff Wyler was negligent in hiring Vogel and in allowing Vogel to supervise female employees since Jeff Wyler was aware (or, alternatively, certainly should have been aware) that Vogel had a propensity for sexual harassment.

80. Jeff Wyler negligently hired, trained, supervised, and retained Vogel.

81. Jeff Wyler knew (or should have known) that Vogel was sexually harassing Hart.

82. Hart's injuries were directly and proximately caused by Vogel's acts.

83. Had Jeff Wyler not been negligent in its hiring, training, supervision, and retention of Defendant Vogel, as described throughout this Complaint, Vogel would not have been able to use his position of power to subject Hart to the sexual harassment described in this Complaint.

84. As a direct result of the negligent training, supervision and retention of Defendant Vogel, Hart has suffered and continues to suffer pain, humiliation, emotional distress, lost wages, and other damages for which Jeff Wyler is liable.

**WHEREFORE,** Plaintiff Shannon Hart respectfully requests that this Honorable Court

enter judgment in her favor in an amount in excess of $75,000, as follows:

     a.     Back pay;

     b.     Front pay;

     c.     Compensatory damages for medical expenses, emotional distress, mental anguish, and pain and suffering;

     d.     Punitive damages;

     e.     Court costs, expenses, interest and attorney's fees; and

     f.     Any other relief authorized by law and deemed just and proper.

Respectfully submitted,

*/s/ Alexander J. Durst*_____
Alexander J. Durst       0089819
Attorney for Plaintiff
The Durst Law Firm
810 Sycamore St., 2nd Floor
Cincinnati, OH 45202
Tel: (513) 621-4999
Fax: (513) 621-0200
alex@durstlawfirm.com

## JURY DEMAND

Plaintiff, Shannon Hart, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

*/s/ Alexander J. Durst*_____
Alexander J. Durst       0089819

11